FILED

DEC 02 2022

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

CALEB L. MCGILLVARY )
  PLAINTIFF )
         V. ) CIVIL ACTION NO,
TODD GRANDE ) 1:22-CV-01342-RGA
  DEFENDANT ) HON. RICHARD G. ANDREWS

## COMPLAINT
### PLAINTIFF REQUESTS A JURY TRIAL

## I. PARTIES IN THIS COMPLAINT

### A. PLAINTIFF (* PLAINTIFF IS INCARCERATED *)

NAME: CALEB L. MCGILLVARY
STREET ADDRESS: #1222665/SBI#1023174 NJSP PO Box 861
COUNTY, CITY: MERCER, TRENTON
STATE & ZIP CODE: NEW JERSEY 08625-0861
TELEPHONE NUMBER: N/A

### B. DEFENDANT

NAME: TODD GRANDE
STREET ADDRESS: 4 WOODIE DRIVE
COUNTY, CITY: NEW CASTLE, NEWARK
STATE & ZIP CODE: DELAWARE 19702
TELEPHONE NUMBER: UNKNOWN

1

## II. BASIS FOR JURISDICTION

THIS COURT HAS JURISDICTION UNDER 28 USC 1331 OVER PLAINTIFF'S CLAIMS UNDER 15 U.S.C. 1125, 18 U.S.C. 2318(e), & 18 U.S.C. 1964. THIS COURT HAS JURISDICTION UNDER 28 U.S.C. 1332 & 28 U.S.C. 1367 OVER PLAINTIFF'S STATE LAW CLAIMS. PLAINTIFF IS A RESIDENT OF NEW JERSEY, & DEFENDANT IS A CITIZEN OF DELAWARE. THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.

## III. STATEMENT OF CLAIM

A. THE EVENTS GIVING RISE TO THESE CLAIMS OCCURED AT TODD GRANDE'S PLACE OF RESIDENCE &/OR YOUTUBE STUDIO IN OR AROUND NEWARK, DELAWARE

B. THE EVENTS GIVING RISE TO THESE CLAIMS OCCURED BEGINNING MARCH 6, 2021 WHEN THE VIDEO WAS FIRST PUBLISHED, INCLUDING & CONTINUING TO THE PRESENT

C. THE FACTS GIVING RISE TO THESE CLAIMS ARE AS FOLLOWS:

### INTRODUCTION

1.) PLAINTIFF CALEB L. MCGILLVARY (HEREINAFTER, "PLAINTIFF") IMMIGRATED TO AMERICA FROM CANADA IN 2012. HE HAS NEVER BEEN CONVICTED OF ANY CRIME IN CANADA. ON FEBRUARY 1, 2013; PLAINTIFF USED HIS CAMPING HATCHET TO HEROICALLY SAVE A CROWD

OF PEOPLE FROM A VIOLENT WHITE SUPREMACIST WHO WAS TRYING TO KILL THEM ALL. PLAINTIFF IMMEDIATELY THEREAFTER GAVE AN EXCLUSIVE INTERVIEW TO KMPH FOX NEWS. THIS VIDEO WENT VIRAL, & PLAINTIFF BECAME WIDELY KNOWN AS "KAI THE HATCHET WIELDING HITCHHIKER"; A LEGENDARY FOLK HERO. PLAINTIFF SUBSEQUNTLY APPEARED UNDER THIS WIDELY RECOGNIZED MARK ON JIMMY KIMMEL LIVE!, EBAUMS WORLD, & THE GREGORY BROTHERS. PLAINTIFF, WHO WAS A HOMELESS STREET MUSICIAN AT THE TIME, ALSO ENJOYED A MULTITUDE OF FANS WHO INVITED HIM TO STAY WITH THEM AT THEIR HOMES. UNFORTUNATELY, ON MAY 12, 2013, A WELL-CONNECTED LAWYER FROM THE JUDICIALLY NOTICEABLE WHITE SUPREMACIST HOTSPOT OF CLARK, NEW JERSEY; DRUGGED PLAINTIFF'S DRINK & SEXUALLY ASSAULTED PLAINTIFF. PLAINTIFF AWOKE DURING THE ASSAULT & DEFENDED HIMSELF, NOT REALIZING THE RAPIST DIED UNTIL PLAINTIFF WAS ARRESTED ON MAY 16, 2013 & CHARGED WITH MURDER. PLAINTIFF WAS FALSELY CONVICTED ON APRIL 24, 2019; BECAUSE OF WHAT A FEDERAL JUDGE RECENTLY HELD TO BE A "SUFFICIENTLY ALLEGED CONSPIRACY"; BETWEEN PLAINTIFF'S DEFENSE COUNSEL, THE PROSECUTOR, & THE RAPIST'S FAMILY: "TO DEPRIVE PLAINTIFF OF HIS DUE PROCESS RIGHTS",

MCGILLVARY V. GALFY   2:21 - CV - 17121 - MCA - CLW, ECF 66
P.9 (DNJ JULY 28, 2022); SEE ALSO   MCGILLVARY V. DAVIS
2:22 - CV - 04185 - MCA, ECF 1 (DNJ JUNE 22, 2022).
DESPITE THE FALSE MURDER CONVICTION, PLAINTIFF
STILL ENJOYS MASSIVE ESTEEM, RESPECT, GOODWILL, &
CONFIDENCE FROM THE MILLIONS OF PEOPLE WHO
RECOGNIZE HIM FOR HIS HEROIC ACTIONS ON FEBRUARY
1, 2013.

2.) ON MARCH 6, 2021, DEFENDANT TODD GRANDE
(HEREINAFTER "DEFENDANT"); PUBLISHED A VIDEO ON HIS
YOUTUBE CHANNEL: IN WHICH HE PRETENDED TO BE A
DOCTOR; MADE UNAUTHORIZED DISCLOSURES OF PLAINTIFF'S
PRIVATE HEALTH INFORMATION; & MADE SLANDEROUS
STATEMENTS MALIGNING PLAINTIFF; ALL UNDER THE PRETEXT
OF PROVIDING AN EXPERT PSYCHOLOGICAL ANALYSIS OF
PLAINTIFF, USING THE "NEO-PI" DIAGNOSTIC TOOL (HEREINAFTER,
"THE VIDEO"). DEFENDANT IS NOT LICENSED TO PRACTICE
MEDICINE, PSYCHIATRY, NOR PSYCHOLOGY IN ANY STATE. HE
GOT HIS "PHD", "MASTERS", & "B.S." DEGREES IN LESS THAN
3 YEARS IN TOTAL: FROM ONLINE DIPLOMA MILLS
WITH 100% ACCEPTANCE RATES.

3.) DEFENDANT INTENTIONALLY, KNOWINGLY, & WITH MALICE
USED PLAINTIFF'S IMAGE AS A THUMBNAIL; & PLAINTIFF'S
DISTINCTIVE & DISTINGUISHING MARKS "KAI THE HITCHHIKER"

& "THE HATCHET WIELDING HITCHHIKER"; TO ADVERTISE THE VIDEO: WITHOUT PLAINTIFF'S CONSENT.

4.) ON MARCH 7, 2021 AT 12:27PM, PLAINTIFF SENT A LETTER TO DEFENDANT VIA EMAIL REQUESTING DEFENDANT TO PERMANENTLY REMOVE & CEASE BROADCASTING THE VIDEO. PLAINTIFF INDICATED IN HIS LETTER THAT DEFENDANT WAS COMMITTING A CRIMINAL OFFENSE BY HOLDING HIMSELF OUT AS A "DOCTOR" & PSYCHIATRICALLY DIAGNOSING PEOPLE.

5.) ON AN UNKNOWN DATE SUBSEQUENT TO HIS RECEIPT OF PLAINTIFF'S MARCH 7, 2021 LETTER; DEFENDANT REMOVED, EDITED, & RE-PUBLISHED THE VIDEO ON HIS YOUTUBE CHANNEL WITH THE CAVEAT AT 00:08 - 00:18: "JUST A REMINDER, I'M NOT DIAGNOSING ANYBODY IN THIS VIDEO." NONETHELESS, DEFENDANT'S PURPORTED PSYCHOLOGICAL ASSESSMENT, ANALYSIS, & DIAGNOSIS OF PLAINTIFF USING THE NEO-PI DIAGNOTIC TOOL; & UNAUTHORIZED DISCLOSURE OF PLAINTIFF'S PRIVATE HEALTH INFORMATION; IS STILL INCLUDED IN THE VIDEO, AS IT IS BEING BROADCAST AT TIME OF WRITING. THE VIDEO IS INCORPORATED BY REFERENCE, WITH TRANSCRIPT ATTACHED AS "EXHIBIT A".

6.) DEFENDANT INTENTIONALLY, UNKNOWINGLY, & WITH MALICE USED PLAINTIFF'S IMAGE AS A THUMBNAIL; & PLAINTIFF'S DISTINCTIVE & DISTINGUISHING MARKS "KAI THE HITCHHIKER" & "THE HATCHET WIELDING HITCHHIKER"; TO ADVERTISE THE

SECOND PUBLISHED VIDEO: WITHOUT PLAINTIFF'S CONSENT.

## LANHAM ACT CLAIMS

**7.)** PLAINTIFF IS & HAS BEEN ACTIVELY SEARCHING FOR OPPORTUNITIES TO COMMERCIALIZE HIS IDENTITY, IMAGE, & MARKS; THROUGH LICENSING HIS MARKS TO FILM PRODUCTION COMPANIES, & THROUGH MONETIZING HIS YOUTUBE CHANNEL & SOCIAL MEDIA PLATFORM. PLAINTIFF IS CURRENTLY LICENSING USE OF HIS VOICE, NAME, & LIKENESS TO YOUTUBERS "THE GREGORY BROS" & "WAVY WEB SURF" UNDER QUALITY-CONTROLLED LICENSE AGREEMENTS.

**8.)** IN FEBRUARY OF 2013, PLAINTIFF QUALITY-CONTROL LICENSED HIS NAME, VOICE, & LIKENESS TO JIMMY KIMMEL LIVE! FOR A SINGLE EPISODE; IN CONSIDERATION FOR A LIMOUSINE FULL OF MARIJUANA, & AN ALL-EXPENSE PAID VACATION IN SAID LIMO WITH A SURFBOARD, & WETSUIT. THE VALUE OF THE CONSIDERATION WAS IN EXCESS OF $14,000. PLAINTIFF PERSONALLY VISITED THE SITE OF PRODUCTION & DECIDED WHAT TO SAY "ON AIR"; THEREBY QUALITY-CONTROLLING THE PRODUCT.

**9.)** IN FEBRUARY OF 2013, PLAINTIFF GRANTED "THE GREGORY BROS" A QUALITY-CONTROLLED LICENSE TO USE HIS NAME, VOICE, & LIKENESS TO MARKET THEIR AUTO-TUNED SONG ON YOUTUBE & iTUNES; AT WHICH TIME PLAINTIFF AGREED

6

To visit & inspect the site of production. In April of 2013, pursuant to this agreement, plaintiff inspected the site of production in Williamsburg, NY; & ascertained that the product was manufactured with superb quality. Plaintiff routinely inspects the product on YouTube & iTunes, only to discover that its original excellent quality remains unchanged. Plaintiff has received & continues to receive licensing fees from the use of his marks; since the moment of initial production to the present: & will continue to do so for the foreseeable future. This has benefitted plaintiff approximately $14,000 so far.

10.) In October of 2018, plaintiff entered into a quality-controlled license of his name, voice, likeness, & marks with "Wavy Web Surf" to market his YouTube channel. In lieu of inspecting the site of production, due to impossibility because of plaintiff's incarceration, plaintiff inspected the script of the video & approved it for production. In consideration for this, Wavy Web Surf paid plaintiff the sum of $2700 & included advertisement of a link to plaintiff's token crowdfunding platform, which raised approximately $11,300 therefrom so far.

11.) PLAINTIFF ALSO HAS A YOUTUBE CHANNEL IN DIRECT COMPETITION WITH DEFENDANT'S FOR THE SAME TYPE OF PRODUCTS & CUSTOMERS

12.) FROM THE FACTS PLEADED IN "8", "9", & "10" ABOVE; THE FAIR MARKET VALUE OF PLAINTIFF'S ENDORSEMENT OF A VIDEO WITH HIS NAME, VOICE, LIKENESS, OR MARKS; IS CURRENTLY $14,000 PER PUBLISHED VIDEO.

13.) PLAINTIFF IS FAMOUS & WIDELY RECOGNIZED FOR HIS NAME, VOICE, LIKENESS, & UNREGISTERED MARKS "KAI THE HITCHHIKER"; "THE HATCHET WIELDING HITCHHIKER"; & "SMASH, SMASH, SMASH!."

14.) DEFENDANT HAS UNJUSTLY ENRICHED HIMSELF USING PLAINTIFF'S NAME, VOICE, LIKENESS, & MARKS TO ADVERTISE HIS MONETIZED VIDEO; THEREBY ACQUIRING DIRECT PROCEEDS THROUGH MONETIZATION; & INDIRECT PROCEEDS THROUGH THE LIFETIME VALUE OF HIS NEW SUBSCRIBERS, PRODUCED BY SAID ADVERTISEMENTS, ON HIS YOUTUBE & PATREON ACCOUNTS.

15.) DEFENDANT HAS DEPRIVED PLAINTIFF OF THE FAIR MARKET VALUE OF AN ENDORSEMENT WORTH $14,000; EACH TIME DEFENDANT PUBLISHED THE VIDEO.

16.) DEFENDANT'S YOUTUBE SUBSCRIBERS INCREASED FROM LESS THAN 700,000 WHEN HE FIRST PUBLISHED THE VIDEO; TO 1,300,000 AT THE TIME OF WRITING.

DEFENDANT'S PATREON ACCOUNT HAD A COMMENSURATE INCREASE IN SUBSCRIBERS DURING THIS PERIOD. THIS INCREASE RESULTED FROM DEFENDANT'S USE OF PLAINTIFF'S NAME, VOICE, LIKENESS & MARKS TO ADVERTISE HIS VIDEO & CHANNEL FOR THE PURPOSE OF GAINING SUBSCRIBERS.

17.) THE LIFETIME VALUE OF EACH OF DEFENDANT'S YOUTUBE SUBSCRIBERS IS CALCULATED BY THIS FORMULA:

[(CHANNEL TOTAL VIDEO VIEWS PER YEAR) ÷ (AVERAGE NUMBER OF SUBSCRIBERS PER 1000 VIEWS) ÷ 1000] × [(DELAWARE AVERAGE LIFE EXPECTANCY) - (DEFENDANT'S AGE AT TIME OF PUBLISHING)] × (MONETIZATION RATE)

18.) THE LIFETIME VALUE OF EACH OF DEFENDANT'S PATREON SUBSCRIBERS IS CALCULATED BY THIS FORMULA:

[(AVERAGE # OF VIDEOS PUBLISHED PER YEAR) × (AVERAGE TOTAL PAYMENTS PER VIDEO) ÷ (AVERAGE # OF SUBSCRIBERS PER YEAR)] × [(DELAWARE AVERAGE LIFE EXPECTANCY) - (DEFENDANT'S AGE AT TIME OF PUBLISHING)] × (MONETIZATION RATE)

19.) ACCORDING TO SOCIALBLADE, DEFENDANT'S YOUTUBE CHANNEL HAS 264,000,000 TOTAL VIDEO VIEWS OVER THE PAST 8 YEARS; OR ABOUT AN AVERAGE OF 33,000,000 PER YEAR. WITH AN AVERAGE OF ABOUT 650,000 SUBSCRIBERS; THIS MAKES FOR AN AVERAGE OF 51 VIEWS PER SUBSCRIBER PER YEAR: AT AN ESTIMATED AVERAGE RATE OF $3.40 PER

1000 VIEWS, DELAWARE'S AVERAGE LIFE EXPECTANCY IS 74 YEARS, & DEFENDANT LOOKS ABOUT 50 YEARS OLD; SO THE ESTIMATED LIFETIME VALUE OF HIS 600,000 NEW SUBSCRIBERS, RESULTING FROM HIS CONDUCT PLEADED IN "14" & "16" ABOVE & ELSEWHERE IN THIS COMPLAINT, IS $2,484,000.00 OF UNJUST ENRICHMENT.

20.) DEFENDANT'S PATREON SUBSCRIBERSHIP & REVENUE IS UNASCERTAINABLE WITHOUT DISCOVERY; BUT IS ESTIMATED TO HAVE ACCRUED A SIMILAR INCREASE IN NEW SUBSCRIBERS TO HIS PATREON AS TO HIS YOUTUBE CHANNEL; & IS THEREFORE ALSO, RESULTING FROM HIS CONDUCT IN "14" & "16" & ELSEWHERE IN THIS COMPLAINT, INCREASED IN ESTIMATED LIFETIME VALUE OF $2,484,000.00 OF UNJUST ENRICHMENT.

## FEDERAL CIVIL RICO CLAIM

### A.) FEDERAL CRIMINAL COPYRIGHT INFRINGEMENT

21.) DEFENDANT ILLEGALLY COPIED IMAGES OF PLAINTIFF FROM PLAINTIFF'S FACEBOOK PAGE, A CBS INSIDE EDITION INTERVIEW OF PLAINTIFF, & A KMPH FOX NEWS INTERVIEW OF PLAINTIFF; THEN AFFIXED THESE IMAGES AS COUNTERFEIT LABELS TO HIS VIDEOS FOR THE PURPOSE OF MARKETING & TRAFFICKING THEM IN INTERSTATE COMMERCE. DEFENDANT NEVER RECEIVED PERMISSION FROM THE COPYRIGHT OWNERS TO USE THE IMAGES, HIS

CONDUCT IS IN VIOLATION OF 18 U.S.C. 2318, 2319, d/OR 2320. EACH PUBLISHING OF THE VIDEO CONSTITUTED A SEPERATE & DISTINCT ACT IN VIOLATION OF THESE STATUTES. PLAINTIFF IS ENTITLED TO DAMAGES FROM DEFENDANT UNDER 18 U.S.C. 2318(e).

22.) PLAINTIFF WAS A TRAVELING TROUBADOR & STREET PERFORMER, WHO EARNED HIS LIVING BY BUSKING, AT THE TIME OF HIS FEBRUARY 1, 2013 INTERVIEW. PLAINTIFF CREATED HIS PERFORMANCE DESCRIBING THE EVENTS IN SAID INTERVIEW & SET IT IN THE TANGIBLE MEDIUM OF HIS HIPPOCAMPUS. HE THEREAFTER RE-CREATED HIS PERFORMANCE FOR HIS ADORING FANS WHILE BUSKING; RECEIVING GENEROUS COMPENSATION THEREFOR IN THE FORM OF PAID VACATIONS, CASH, & TANGIBLE ASSETS. PLAINTIFF OWNS THE COPYRIGHT TO HIS PERFORMANCE IN THE VIDEO, & ANY IMAGES THEREOF EXTRACTED THEREFROM.

23.) DEFENDANT COPIED AN IMAGE OF PLAINTIFF'S COPYRIGHTED PERFORMANCE FROM THE VIDEO OF THE FEBRUARY 1, 2013 INTERVIEW WITHOUT AUTHORIZATION; & USED THE INFRINGING IMAGE AS A COUNTERFEIT LABEL TO ADVERTISE & SELL HIS AUDIOVISUAL WORKS IN INTERSTATE & FOREIGN COMMERCE FOR THE PURPOSE OF MONETIZATION OF HIS VIDEOS & FOR SELLING ADS IN INTER STATE

11

& FOREIGN COMMERCE, UNKNOWINGLY & WITH MALICE

b.) WIRE FRAUD

24.) DEFENDANT FRAUDULENTLY REPRESENTED, THROUGH TRANSMISSION BY WIRE, TO YOUTUBE THAT HIS VIDEO WAS IN COMPLIANCE WITH YOUTUBE'S TERMS OF SERVICE/TERMS OF USE: BY MAKING A CLICKWRAP AGREEMENT TO THAT EFFECT EACH TIME HE UPLOADED &/OR PUBLISHED THE VIDEO.

25.) DEFENDANT KNEW THE FALSITY OF HIS MISREPRES- ENTATIONS IN "24" EACH TIME THEY WERE MADE: AS UNAUTHORIZED DISCLOSURE OF PLAINTIFF'S HIPAA - & STATE LAW - PROTECTED MENTAL HEALTH REPORT & HEALTH INFORMATION IS A VIOLATION OF YOUTUBE'S TERMS OF SERVICE/TERMS OF USE; AS IS FALSELY HOLDING ONESELF OUT AS A PSYCHIATRIC DOCTOR AS ADMITTED IN "41".

26.) DEFENDANT INTENDED TO INDUCE YOUTUBE'S RELIANCE ON HIS MISREPRESENTATIONS & THEREBY DEFRAUD A PORTION OF THE MONETIZATION REVENUE FROM EACH & EVERY VIEWER &/OR SUBSCRIBER RESULTING FROM THE CLICKWRAP AGREEMENTS.

27.) YOUTUBE JUSTIFIABLY RELIED UPON DEFENDANT'S MISREPRESENTATIONS IN "24" TO ITS LEGAL DETRIMENT IN PURSUING ADVERTISEMENTS & CONTRACTS WITH ADVERTISERS, WHO ALSO JUSTIFIABLY RELIED ON

SAID MISREPRESENTATIONS, ON SAID VIDEOS; TO PAY
DEFENDANT THROUGH TRANSMISSION BY WIRE &/OR
A FEDERALLY INSURED BANK FOR THE ILLEGAL PUBLICATION
OF PLAINTIFF'S HIPAA - & STATE LAW - PROTECTED MENTAL
HEALTH REPORT & HEALTH INFORMATION.

28.) PLAINTIFF WAS HARMED BY THE DEFENDANT'S
ACTIONS AS PLEADED IN "24-27"; IN THE MANNER OF
UNAUTHORIZED DISCLOSURE OF PLAINTIFF'S HIPAA - & STATE
LAW - PROTECTED MENTAL HEALTH REPORT & HEALTH
INFORMATION; WHICH CAUSED PLAINTIFF EMOTIONAL
DISTRESS, MENTAL ANGUISH, HARM TO REPUTATION, &
UNJUST ENRICHMENT OF DEFENDANT AT PLAINTIFF'S LEGAL
DETRIMENT

29.) PLAINTIFF'S MENTAL HEALTH REPORT & HEALTH INFORM-
ATION WAS PART OF A PRE-SENTENCE REPORT; WHICH
UNDER NEW JERSEY & 3RD CIRCUIT LAW (WHICH APPLIES
IN THE COURT WHEREIN THE MENTAL HEALTH REPORT &
HEALTH INFORMATION WAS INTRODUCED); IS PROTECTED &
PRIVATE UNDER HIPAA - & STATE-PRIVACY ACTS.

30.) PLAINTIFF REPLEADS "24"-"29" AS WIRE FRAUD UNDER
18 U.S.C. 1343 &/OR BANK FRAUD UNDER 18 U.S.C. 1346
&/OR MONEY LAUNDERING UNDER 18 U.S.C. 1956.

__c.)__ 18 U.S.C. 1964

31.) DEFENDANT IS PART OF A MONETIZATION PARTNERSHIP WITH YOUTUBE &/OR GOOGLE ADSENSE; IN WHICH HE IS PAID AN ESTIMATED $3.40 PER 1000 VIEWS ON EACH OF HIS MONETIZED VIDEOS. THIS MONEY IS GENERATED FROM ADVERTISING, WHEREBY THIRD PARTIES PURCHASE ADS WHICH ARE PLAYED BEFORE, DURING, & AFTER VIDEOS; WHICH ARE BROADCAST TO CITIZENS OF ALL 50 STATES & INTERNATIONALLY. EACH OF THESE THIRD PARTIES PAY YOUTUBE &/OR GOOGLE FROM THEIR HOME STATE; WHO IN TURN APPORTION DEFENDANT AN AMOUNT OF REVENUE FROM EVERY THOUSAND OF THESE TRANSACTIONS. THIS AMOUNT IS TRANSFERRED ACROSS STATE LINES FROM CALIFORNIA TO DEFENDANT'S BANK ACCOUNT IN DELAWARE; FROM WHICH HE INVESTS THE PROCEEDS INTO REAL ESTATE & OTHER ENTERPRISES. THESE TRANSACTIONS INVOLVE FEDERALLY-INSURED BANKS & AFFECT INTERSTATE COMMERCE.

32.) DEFENDANT'S VIOLATION OF THE STATUTES IN "21"-"30" FORM THE PATTERN OF RACKETEERING ACTIVITY, WITH THE TWO PUBLISHINGS OF THE VIDEO EACH CONSTITUTING A PREDICATE ACT, AS DEFINED BY 18 U.S.C. 1961. DEFENDANT HIMSELF FORMS THE PERSON & PRINCIPLE; HIS YOUTUBE CHANNEL & MONETIZATION PARTNERSHIP FORM THE ENTERPRISE;

ALONG WITH HIS INVESTMENT IN HIS YOUTUBE &/OR GOOGLE ACCOUNTS, PATREON, FINANCIAL ACCOUNTS, & PERSONAL & REAL PROPERTIES WITH THE PROCEEDS FROM HIS RACKETEERING ACTIVITIES; & THE FACTS IN "31"; FORM THE "PROHIBITED ACTIVITIES" AS DEFINED BY 18 U.S.C. 1962. DEFENDANT IS THEREFORE LIABLE TO PLAINTIFF FOR TREBLE DAMAGES UNDER 18 U.S.C. 1964.

### PUBLIC DISCLOSURE OF PRIVATE FACT/ INVASION OF PRIVACY CLAIM

33.) PLAINTIFF REPLEADS "2"-"5" AS PUBLISHING. IN THE VIDEO, DEFENDANT REPEATEDLY REFERS TO PLAINTIFF'S PRIVATE, HIPAA- PROTECTED HEALTH INFORMATION, STATING:

a.) "HE HAS A HISTORY OF MENTAL HEALTH DIFFICULTIES & WAS HOSPITALIZED SEVERAL TIMES IN RELATION TO THAT. HE ALSO SPENT QUITE A BIT OF TIME IN TREATMENT HOMES." (THIS REFERS TO PLAINTIFF'S PRIVATE HEALTH INFORMATION OF CHILDHOOD TRAUMA & SUBSEQUENT PSYCHOLOGICAL TREATMENT THEREFOR)

b.) "AT THE TRIAL IT WAS REVEALED THAT KAI HAD BEEN DIAGNOSED WITH BIPOLAR DISORDER & POST TRAUMATIC STRESS DISORDER. THE BIPOLAR WAS NOT USED AS PART OF HIS DEFENSE, BUT THE PTSD WAS." (THESE DIAGNOSES WERE NOT REVEALED AT TRIAL; BUT WERE PART OF A PRE SENTENCE REPORT & HIPAA - PROTECTED MENTAL HEALTH

REPORT. PLAINTIFF DID NOT USE PTSD AS PART OF HIS DEFENSE.)

C.) "I MENTIONED BEFORE HE WAS DIAGNOSED WITH BIPOLAR DISORDER & PTSD. THERE IS ALSO A REPORT INDICATING HE DISPLAYED WHAT WAS REFERRED TO AS SERIOUS ANTI-SOCIAL BEHAVIOR FROM THE TIME HE WAS A TODDLER. HE REPORTEDLY ADMITTED TO KILLING HAMSTERS & TRYING TO SET THE FAMILY HOME ON FIRE WHEN HE WAS A CHILD. ALSO AS I MENTIONED BEFORE, HE HAD BEEN INSTITUTIONALIZED SEVERAL TIMES WHEN HE WAS YOUNG." ( DEFENDANT OPENLY & UNEQUIVOCALLY ADMITS TO DISCLOSING HEALTH INFORMATION FROM A MENTAL HEALTH REPORT. HE DESCRIBED TWO INCIDENTS FROM THAT HIPAA-PROTECTED REPORT: TO 'WIT', FROM 2 TO 4 YEARS OF AGE, PLAINTIFF'S BIRTH PARENTS KEPT HIM IN A ROOM LOCKED FROM THE OUTSIDE WITH A DEADBOLT; & WHEN PLAINTIFF AWOKE SCREAMING FROM TRAUMATICALLY-INDUCED NIGHT TERRORS, THEY BEAT HIM WITH BROOM HANDLES & THREW HIM IN FREEZING COLD SHOWERS TO SHUT HIM UP. AT 4 YEARS OF AGE, PLAINTIFF'S PET HAMSTERS MADE NOISE AT NIGHT. FEARING FOR THEIR SAFETY, PLAINTIFF TRIED TO PROTECT THEM FROM BEING BEATEN BY HIS BIRTH PARENTS: BY GIVING THE HAMSTERS A COLD SHOWER IN THE BATHROOM SINK, THE HAMSTERS DIED OF PNEUMONIA. ALSO AT 4 YEARS OF AGE, PLAINTIFF

ATTEMPTED SUICIDE & SELF-IMMOLATION BY DRINKING A
BOTTLE OF COUGH SYRUP & LIGHTING A SLEEPING BAG
ON FIRE, BECAUSE HIS FUNDAMENTALIST CULT BIRTH
PARENTS TOLD HIM HE "HAD A DEMON" & "BELONGED
IN HELL.")

34.) PLAINTIFF'S MENTAL HEALTH REPORT & HEALTH INFORMATION
ARE PRIVATE FACTS; UNDER HIPAA, 3RD CIRCUIT LAW,
& NJ & DE STATE LAW.

35.) THE PUBLIC DISCLOSURE OF TRAUMATIC CHILDHOOD
ABUSE OF PLAINTIFF, & OTHER DETAILS CONTAINED WITHIN
PLAINTIFF'S MENTAL HEALTH REPORT & HEALTH INFORMATION
PUBLICLY DISCLOSED BY DEFENDANT, ARE OFFENSIVE &
OBJECTIONABLE TO THE REASONABLE PERSON

36.) THE TRAUMATIC CHILDHOOD ABUSE OF PLAINTIFF & OTHER
MENTAL HEALTH & OTHER HEALTH INFORMATION ABOUT
PLAINTIFF IS NOT OF LEGITIMATE PUBLIC CONCERN.
PLAINTIFF DID NOT RAISE THE MENTAL HEALTH DEFENSE
AT HIS TRIAL; & EVEN IF HE HAD, NJ & 3RD CIRCUIT
LAW PROVIDES FOR PRIVATE HEALTH INFORMATION TO
BE SEALED.

37.) DEFENDANT'S PUBLIC DISCLOSURE OF PRIVATE
FACTS HAS CAUSED PLAINTIFF MENTAL ANGUISH, EMOTIONAL
DISTRESS, & LOSS OF REVENUE FROM LICENSING OF PLAINTIFF'S
NAME, VOICE, LIKENESS & MARKS. IT HAS DAMAGED

PLAINTIFF'S PERSONALITY'S MARKETABILITY; WHICH HAD BEEN CONSISTENTLY EARNING HIM $14,000 PER ENDORSEMENT; & IS SO EGREGIOUS AS TO WARRANT PUNITIVE DAMAGES.

## DEFAMATION CLAIM

38.) PLAINTIFF REPLEADS "2" & "5" AS PUBLICATION.

39.) DEFENDANT SPECIFICALLY INDICATES IN THE VIDEO THAT HIS COMMUNICATIONS THEREIN SPECIFICALLY REFER TO PLAINTIFF.

40.) PLAINTIFF REPLEADS "1" AS ESTABLISHING HIS REPUTATION. AT THE FOLLOWING TIMES IN THE VIDEO, DEFENDANT MADE THE FOLLOWING SLANDEROUS STATEMENTS WITH RECKLESS DISREGARD FOR &/OR KNOWLEDGE OF THEIR FALSITY, WITH ACTUAL MALICE INTENDING THE HARM THAT WOULD RESULT:

00:59 - 01:07 "AT SOME POINT WHEN HE WAS IN CANADA, HE WAS CONVICTED OF FELONIES & MISDEMEANORS; BUT I COULDN'T FIND THE INFORMATION ABOUT WHAT THOSE CHARGES WERE." (DEFENDANT ADMITS THAT HE HAD NO INFORMATION UPON WHICH TO BASE THIS FALSE ATTRIBUTION OF CRIMINALITY. PLAINTIFF HAS NEVER BEEN CONVICTED OF ANY FELONIES OR MISDEMEANORS IN CANADA, SO THIS IS SLANDER PER SE)

01:20 - 01:31 "HE WAS DESCRIBED AS UNRULY, UPREDICTABLE, SOMEONE WHO COULD TURN SUDDENLY DARK, CRUDE, &

PROFANE."

05:09 - 05:22 "HIS BEHAVIOR WAS IMPULSIVE & RECKLESS. HE URINATED IN A VARIETY OF PUBLIC PLACES, WAS DISRESPECTFUL TO WOMEN, WOULD USE EXPLETIVES IN FRONT OF CHILDREN, & WAS GENERALLY GETTING INTO TROUBLE."

05:22 - 05:29 "CBS NEWS REPORTER JESSOB REISBECK STARTED TO HAVE SERIOUS CONCERNS ABOUT KAI'S MENTAL HEALTH; WONDERING WHEN A PERSON WHO APPEARED TO BE UNINHIBITED WAS ACTUALLY UNBALANCED." (JESSOB REISBECK HAS NEVER STATED THIS; & HAS, IN FACT, STATED THE OPPOSITE TO PLAINTIFF IN PERSONAL COMMUNICATIONS)

05:29 - 05:40 "KAI HAD A MASSIVE TATTOO PUT ON THE RIGHT SIDE OF HIS FACE WHICH, IN ADDITION TO HIS OTHER BEHAVIOR, TURNED MANY PEOPLE AGAINST HIM."

05:40 - 05:47 "HE WAS ACCUSED OF BEING MENTALLY ILL, UNINTELLIGENT, INTOXICATED, & ATTENTION-SEEKING."

06:33 - 06:37 "THE AUTHORITIES WOULD LATER SAY THAT SOMETHING OF A SEXUAL NATURE WAS INVOLVED." (THIS IS INNUENDO FOR A FALSE STATEMENT THAT PLAINTIFF, WHO WAS SEXUALLY ASSAULTED, SOMEHOW BROUGHT THE SEXUAL ASSAULT UPON HIMSELF)

19

09:38 - 09:40 "HE WASN'T GOOD AT READING SOCIAL CUES,"
09:46 - 09:48 "HE WAS SOCIALLY AWKWARD,"
09:54 - 09:57 "A LACK OF EMPATHY,"
10:09 - 10:13 "HE WAS LOW IN CONSCIENTIOUSNESS, HE WAS IMPULSIVE & RECKLESS."
10:34 - 10:40 "HE APPEARED TO BE ANGRY & HAD DIFFICULTY RESISTING TEMPTATION."
10:54 - 11:10 "ONCE POTENTIAL SYMPTOMS OF MENTAL ILLNESS BECAME MORE APPARENT, LIKE IMPULSIVITY, RECKLESS BEHAVIOR, A DISREGARD FOR SOCIAL NORMS, & PROFANITY: NOBODY WAS REALLY INTERESTED IN ASSOCIATING WITH HIM, OR CERTAINLY THE NUMBER OF PEOPLE INTERESTED DROPPED DRAMATICALLY."

THESE STATEMENTS ALL & EACH INJURE PLAINTIFF'S REPUTATION; & DIMINISH THE ESTEEM, RESPECT, GOODWILL, OR CONFIDENCE IN WHICH THE PLAINTIFF IS HELD.

41.) DEFENDANT EXPLICITLY HELD HIMSELF OUT AS A "DOCTOR"; & BY INNUENDO & EXPLICITLY MADE THE STATEMENTS IN "40" AS PSYCHIATRIC & PSYCHOLOGICAL DIAGNOSES OF PLAINTIFF IN "2". DEFENDANT'S ACTIONS IN "5" ARE ADMISSIONS BY CONDUCT AGAINST DEFENDANT'S INTEREST; SHOWING THAT HE WAS AWARE OF THE WRONGFUL & HARMFUL NATURE OF HIS STATEMENTS IN "40" & "33", & ADMITTING TO HOLDING HIMSELF OUT AS A PSYCHIATRIC DOCTOR IN "2".

20

42.) IT IS CLEAR FROM THE COMMENTS ON THE YOUTUBE VIDEO THAT THE COMMUNICATION'S DEFAMATORY CHARACTER WAS UNDERSTOOD BY THE VIEWERS OF THE VIDEO.

43.) DEFENDANT'S DEFAMATORY STATEMENTS HAVE CAUSED PLAINTIFF MENTAL ANGUISH, EMOTIONAL DISTRESS, & LOSS OF REVENUE FROM LICENSING OF PLAINTIFF'S NAME, VOICE, LIKENESS, & MARKS. IT HAS DAMAGED PLAINTIFF'S PERSONALITY'S MARKETABILITY; WHICH HAD BEEN CONSISTENTLY EARNING HIM $14,000 PER ENDORSEMENT; & IS SO EGREGIOUS AS TO WARRANT PUNITIVE DAMAGES.

<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM</u>

44.) PLAINTIFF REPLEADS "2" - "6" & "21" - "37" AS SHOWING EXTREME & OUTRAGEOUS CONDUCT; ADMITTED TO BY THE DEFENDANT IN "41"; WITH THE INTENTION OF CAUSING, OR RECKLESS DISREGARD OF THE PROBABILITY OF CAUSING, EMOTIONAL DISTRESS TO PLAINTIFF.

45.) PLAINTIFF HAS SUFFERED SEVERE OR EXTREME EMOTIONAL DISTRESS AS A DIRECT RESULT OF DEFENDANT HOLDING HIMSELF OUT AS A DOCTOR & MAKING FALSE STATEMENTS ABOUT PLAINTIFF WITH THE APPARENT AUTHORITY OF A PSYCHIATRIST; & OF DEFENDANT'S UNAUTHORIZED DISCLOSURE OF PLAINTIFF'S HIPAA- & STATE LAW- PROTECTED MENTAL

HEALTH RECORDS & HEALTH INFORMATION IN THE VIDEO:
AS EVIDENCED BY MEDICAL DOCUMENTATION OF DEFENDANT
TRIGGERING PTSD FROM PLAINTIFF'S CHILDHOOD TRAUMA
& ANGUISH THEREFROM, WHICH WAS ACTUALLY &
PROXIMATELY CAUSED BY DEFENDANT'S EXTREME &
OUTRAGEOUS CONDUCT.

## PUNITIVE DAMAGES

46.) ALL THE TORTIOUS ACTS COMMITTED BY DEFENDANT
AGAINST PLAINTIFF WERE ACTUATED BY ACTUAL MALICE
OR ACCOMPANIED BY A WANTON & WILLFUL DISREGARD
OF PLAINTIFF, WHO MIGHT FORESEEABLY BE HARMED BY
THOSE ACTS. IT IS BOTH REASONABLE & JUSTIFIABLE TO
AWARD PUNITIVE DAMAGES OF 5 TIMES COMPENSATORY
DAMAGES OR $350,000, WHICHEVER IS GREATER; AS A
DETERRENT TO INDIVIDUALS WHO PUBLISH FALSE DIAGNOSES
& PROTECTED HEALTH INFORMATION; WHILE POSING AS A
DOCTOR, WITH CREDENTIALS THEY MIGHT AS WELL HAVE
PULLED FROM THE BOTTOM OF A CRACKER JACK BOX.

## CATCH-ALL CLAUSE

47.) IF ANY PARAGRAPH OF THIS COMPLAINT PLEADED AS AN
ELEMENT OF ONE CLAIM SUBSTANTIATES OR BOLSTERS ANY
OTHER CLAIM; THEN PLAINTIFF ADOPTS IT BY REFERENCE &
REPLEADS THAT PARAGRAPH IN SUPPORT OF EACH CLAIM IT
SUBSTANTIATES OR BOLSTERS

## IV. PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT THIS COURT ENTER JUDGMENT:

48.) GRANTING PLAINTIFF DECLARATORY RELIEF, THAT GRANDE'S CONDUCT IS UNLAWFUL & TORTIOUS; &

49.) A PRELIMINARY & PERMANENT INJUNCTION ORDERING DEFENDANT TO REMOVE THE VIDEO FROM BROADCAST & TO CEASE USING PLAINTIFF'S MARKS, IMAGE, NAME, VOICE, OR LIKENESS TO MARKET HIS PRODUCTS; &

50.) GRANTING PLAINTIFF RESTITUTION &/OR COMPENSATORY DAMAGES IN THE AMOUNT OF $4,996,000 AGAINST DEFENDANT; &

51.) PLAINTIFF ALSO SEEKS NOMINAL DAMAGES & PUNITIVE DAMAGES IN THE AMOUNT OF 5 TIMES COMPENSATORY DAMAGES OR $350,000, WHICHEVER IS GREATER; &

52.) PLAINTIFF ALSO SEEKS THAT DAMAGES BE TREBLED PURSUANT TO 18 U.S.C. 1964; &

53.) PLAINTIFF ALSO ASKS FOR ANY OTHER RELIEF THIS COURT DEEMS JUST, PROPER, & EQUITABLE.

I DECLARE UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. 1746 THAT THE FOREGOING STATEMENTS ARE TRUE & ACCURATE TO THE BEST OF MY KNOWLEDGE & BELIEF.

EXECUTED THIS 30TH DAY OF NOVEMBER, 2022.

RESPECTFULLY SUBMITTED,

CALEB L. MCGILLVARY, PRO SE
#1222665/SBI #1023176 NJSP
PO BOX 861 TRENTON, NJ 08625-0861

CALEB _____
#122665/SBI#1023174
NJSP PO BOX 861
TRENTON, NJ
08625-0861



CLERK
U.S. DIST. CT. - DIST. OF DE
844 N. KING ST. UNIT 18
WILMINGTON, DE
19801

MISC  FILED
DEC 0 2 2022
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

U.S.M.S.
X-RAY

LEGAL MAIL